UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ACUITY, | ) | CASE NO. 4:06CV0415 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| CITY CONCRETE L.L.C., et al., | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

The instant matter is before the Court on the motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendants and Plaintiff asking the Court to decide whether Plaintiff is obligated under a commercial general liability policy to defend and indemnify Defendants for claims arising out of certain state court suits. ECF Dkt. #s 26-27. For the following reasons, the Court DENIES Defendants' Motion for Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment.

**I.    FACTUAL ALLEGATIONS**

For a period beginning August 13, 2000 and ending August 13, 2001, Plaintiff Acuity ("Plaintiff") provided a commercial general liability policy to Defendant City Concrete, L.L.C. ("City Concrete"). ECF Dkt. #1, Attachment 1. The policy was renewed for a period beginning August 13, 2001 and ending August 13, 2002. ECF Dkt. #1, Attachment 2. Defendants City Concrete and John Annechini (collectively "Defendants") have been the subject of multiple suits in Ohio State Courts alleging that Defendants manufactured defective concrete. ECF Dkt. #11, Attachments 1-3; ECF Dkt #15, Attachments 8, 9. These cases are DiLALLO v. ANNECHINI,

et al. (Mahoning Cty. Court of Common Pleas Case No. 04 CV 2373, hereafter "DiLALLO"), MIRKIN v. DiLALLO, et al. (Trumbull Cty. Court of Common Pleas Case No. 05 CV 2028, hereafter "MIRKIN"), and ZUMPELLA v. DiLALLO, et al. (Mahoning Cty. Court of Common Pleas Case No. 03 CV 4416, hereafter "ZUMPELLA").  ECF Dkt. #11, Attachments 1-3.  Defendants are also subject to a cross-claim in NAUGHTON v. DiLALLO v. CITY CONCRETE, et al. (Mahoning County Area Court #5 Case No. 04 CV F 00418, hereafter "NAUGHTON").  ECF Dkt. #15, Attachments 8, 9.  In accordance with the insurance policies, Plaintiff has been providing both Defendants with a defense in DiLALLO and NAUGHTON, but has reserved the right to withdraw and deny defense, pending the resolution of the instant matter.  ECF Dkt. #1 at ¶¶16-17; ECF Dkt. #9 at ¶6; ECF Dkt. #15.  In the MIRKIN case, Plaintiff's provided counsel has already withdrawn from the defense and was replaced by counsel provided by another insurer.  ECF Dkt. #15, Attachment 1; ECF Dkt. #26 at 2.  Also, the parties settled the ZUMPELLA case on March 13, 2006.  ECF Dkt. #15 at 3, Attachments 2-4; ECF Dkt. #26 at 2.

On February 23, 2006, Plaintiff filed its complaint in this Court, seeking declaratory judgment as to its duty to defend or indemnify Defendants in these or any additional suits. ECF Dkt. #1 at ¶22. On April 7, 2006, Defendants filed a joint answer.  ECF Dkt #9.  On April 11, 2006, the parties consented to the jurisdiction of the undersigned.  ECF Dkt. #13.  On April 21, 2006, Defendants filed a motion to dismiss for lack of diversity jurisdiction.  ECF Dkt. #15.  On May 22, 2006, Plaintiff filed a brief in opposition to the motion to dismiss.  ECF Dkt. #17.  On May 26, 2006, Defendants filed a reply brief.  ECF Dkt. #18.  On June 7, 2006, the Court denied Defendants' motion to dismiss.  ECF Dkt. #s 20-21.

On August 10, 2006, Plaintiff and Defendants both filed their respective motions for summary judgment.[1] ECF Dkt. #s 26-27. On that same date, Plaintiff also filed a statement of uncontested facts. ECF Dkt. #28. On September 8, 2006, Defendants filed a brief in opposition to Plaintiff's motion for summary judgment and a response to Plaintiff's uncontested facts. ECF Dkt. #s 29-30. On September 21, 2006, Plaintiff filed a reply brief in support of its motion for summary judgment and an opposition to Defendants' motion for summary judgment. ECF Dkt. #31. On October 4, 2006, Defendants filed a reply brief. ECF Dkt. #32.

## II.   STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C). In ruling on a motion for summary judgment, a court must view the facts

---

[1] In its motion for summary judgment, Plaintiff requests a declaratory judgment as to its duties only with respect to the state court cases of NAUGHTON and DiLALLO. Defendants, on the other hand, request summary judgment as to all four of the state court cases. However, MIRKIN is being defended by another insurer and there is no issue regarding the propriety of that representation before the Court. Also, ZUMPELLA has been settled and there is no issue currently before the court regarding the propriety of that settlement. Thus, the Court will confine its discussion to the cases of NAUGHTON and DiLALLO.

contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). A court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists by informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex*, 477 U.S. at 323; *Morales v. Am. Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED. R. CIV. P. 56(e). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ont., Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts." *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990).

A movant is then entitled to summary judgment if the non-movant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *See Spells v. Cuyahoga Cmty. Coll.*, 889 F. Supp. 1023, 1026 (N.D. Ohio 1994). The district court does not have a duty to consider evidence in opposition to a summary judgment motion that the non-movant did not bring forth in opposition to the motion. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907.

**III. ANALYSIS**

Defendants argue that the Court should declare that Plaintiff owes a duty to defend or indemnify Defendants against the underlying state court suits. ECF Dkt. #26. Plaintiff, on the other hand, argues that the Court should declare that it owes no duty to defend or indemnify Defendants in either the case of DiLALLO or ZUMPELLA. ECF Dkt. #27. The undersigned will address each argument in turn.

An insurer's duty to defend is separate and distinct from its duty to indemnify.[2] *See W. Lyman Case & Co. v. Nat'l City Corp.*, 76 Ohio St.3d 345, 347 (1996). "The duty to indemnify only arises when there is, in fact, coverage." *Reliable Springs Co. v. St. Paul Fire & Marine Ins. Co.*, 869 F.2d 993, 994 (6th Cir. 1989) (citing *Riverside Ins. Co. v. Wiland*, 16 Ohio App. 3d 23, 16 Ohio B. 24, 474 N.E.2d 371 (App. Ct. 1984)). The duty of an insurance company to defend an action against

---

[2] In this diversity suit, Defendants assert and the undersigned agrees that Ohio law applies. Plaintiff has also cited Ohio law. Accordingly, the undersigned will apply the law of the state of Ohio to the facts of this case. *See Swix v. Daisy Mfg. Co., Inc.*, 373 F.3d 678, 681(6th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

an insured is determined by the scope of the allegations contained in the state court complaint. *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, *paragraph two of the syllabus* (1973). Even when the action is not clearly within the policy coverage, but the allegations could arguably or potentially state a claim within the policy coverage, the insurer still has a responsibility to defend the entire action. *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 586, 1994-Ohio-379 (1994). Thus, the relevant inquiry before this Court is whether the allegations in the underlying state court complaints state claims that are within the policy coverage, thereby requiring Plaintiff to defend Defendants against the underlying state court suits. In determining whether Plaintiff has a duty to defend Defendants, the Court must carefully examine the substance of the complaint as well as the insurance policy at issue.

Under the commercial general liability ("CGL") policy, Plaintiff promised to defend Defendants against any suit seeking property damage to which this insurance applies. ECF Dkt. #1, Attachments 1-2 at 3. The CGL policy covers "property damage" that occurs during the policy period only if the "property damage is caused by an occurrence[.]" ECF Dkt. #1, Attachments 1-2; Section I, Coverage A, ¶1.b. Property damage is defined as "physical injury to tangible property, including all resulting loss of use of that property," or "loss of use of tangible property that is not physically injured." ECF Dkt. #1, Attachments 1-2; Section IV, ¶17. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF Dkt. #1, Attachments 1-2, Section IV, ¶13.

In this case, the underlying state court suits generally allege that Defendants supplied DiLallo Concrete Construction Company, Inc. ("DiLallo") with defective concrete and DiLallo was injured as well as DiLallo's customers who are the recipients of defective concrete driveways. *See* ECF

Dkt. #15, Attachments 8-9. In DILALLO, DiLallo alleges that Defendants are "strictly liable for all defects in the concrete manufacture," have caused loss of revenue, business and potential damages to DiLallo, and have breached their contractual duty. ECF Dkt. #27, Attachment 10 at ¶2, 4. In NAUGHTON, DiLallo alleges that due to Defendants' concrete, Defendants are liable for the plaintiff-homeowners allegations that their driveway was installed and replaced by DiLallo in an unworkmanlike manner and as a result, the driveway and home were damaged. ECF Dkt. #15, Attachments 8-9.

These allegations give rise to Plaintiff's duty to defend Defendants only if they constitute property damage caused by an occurrence. Plaintiff argues that Defendants' allegedly faulty concrete and any damages therefrom do not constitute an "occurrence", but even if they do, one of the exclusions apply to exclude coverage. Defendants on the other hand, argue that their allegedly faulty concrete and resulting defective driveways are an "occurrence" and none of the exclusions preclude coverage.

Many Courts in Ohio have held that, "a general commercial general liability policy does not cover claims of negligent manufacture." *Envtl Exploration Co. v. Bituminous Fire & Marine Ins. Co.*, No. 1999CA00315, 2000 Ohio App. LEXIS 4985 at *21 (App. Ct. 2000); *Home Ins. Co. v. OM Group, Inc.*, 2003 Ohio 3666 (App. Ct. 2003), ¶13. The reason being that commercial general liability insurance is not the same as a performance bond. *Envtl Exploration Co.*, 2000 Ohio App. LEXIS 4985 at *23. One Court explained,

> [T]he risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself .... [N]ot for contractual liability of the ensured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Hartzell Indus. v. Federal Ins. Co.*, 168 F.Supp.2d 789, 801 (D. Ohio 2001); *Home Ins.*, 2003 Ohio 3666, ¶13. Thus, faulty workmanship is not considered an "occurrence" as the term is used in these kinds of policies. *See Taylor v. Hastings Mut. Ins. Co.*, 78 Fed. Appx. 457 (6th Cir. 2003) (explaining that faulty workmanship in the construction of a log home is not covered because the acts alleged do not constitute an "occurrence" as the term is used in the policy); *Heile v. Herman*, 136 Ohio App.3d 351, 353 (1999) (explaining that the only damage was the subcontractors own defective work). Alleging manufacturing defects is not the same thing as alleging an occurrence. *Royal Plastics v. State Auto. Mut. Ins. Co.,* 99 Ohio App. 3d 221, 227 (1994); *U. S. Fire Ins. Co. v. Chardon Rubber Co.*, 1992 U.S. App. LEXIS 8628, *8-9 (6th Cir. 1992) (applying Ohio law and finding no insurer liability when there was only breach of warranty alleged and no property damage other than to the insured's product). Accordingly, in so far as the underlying state court suits allege only property damage to the cement and concrete driveways, the Court finds that there is no policy coverage under the occurrence provision of the CGL policy. *See The Stansley Group v. Fru-Con Constr. Corp.*, No. 3:05cv7023, 2006 U.S. Dist. LEXIS 67718, at *13 (D. Ohio September 21, 2006) (finding no coverage under Ohio law for a GCL policy with an identical occurrence definition where two cement pylons were defective).

Moreover, in DiLALLO, DiLallo alleges loss of revenue, business and potential damages. These economic losses do not fit the definition of property damage in the GCL policy because they are not physical injuries to tangible property. Such purely economic losses are not considered "property damage." *See McDowell-Willman Engineering Co. v. Hartford Accident & Indemnity Co*, 711 F.2d 521 (3d Cir. 1983) (business interruption losses do not amount to injury or destruction of tangible property under Ohio law); *See Home Ins. Co. v. OM Group, Inc.*, 2003 Ohio 3666, P13 (Ct. App. 2003) (noting with approval that GCL coverage is "not for contractual liability of the insured

- 8 -

for economic loss because the product or completed work is not that for which the damaged person bargained."); 4-13 Construction Law § 13.02. Accordingly, in so far as the underlying state court suits allege damage to the driveways or concrete, and economic or business damages, these allegations do not give rise to Plaintiff's duty to defend because they are outside the scope of the CGL policy. *See, e.g., See Home Ins. Co. v. OM Group, Inc., supra*. This leaves one remaining allegation of damage to the house in NAUGHTON.

The Ohio Supreme Court has indicated that whether the conduct at issue is considered an "occurrence" for purposes of the GCL policy or not, the insurance contracts "must be examined in their entirety to determine if there are any applicable exceptions to their coverage." *Zanco, Inc. v. Michigan Mut. Ins. Co.*, 11 Ohio St.3d 114, 464 N.E.2d 513 (Ohio 1984). Therefore, the Court will turn its attention to the exclusion provisions.

> In relevant part, the insurance coverage does not apply to:
>
> (k.) Property damage to your product arising out of it or any part of it.
> (m.) Property damage to impaired property or property that has not been physically injured, arising out of:
>     (1) A defect, deficiency, inadequacy or dangerous condition in your product ... or
>     (2) A ... failure by you ... to perform a contract or agreement in accordance with its terms.
> This exclusion does not apply to loss of use of other property arising out of sudden and accidental physical injury to your product ... after it has been put to its intended use.
> (n.) Damages claimed for any loss, cost or expense incurred by ... others for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of [your product or impaired property], if such product or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*See* ECF Dkt. #1, Attachments 1-2, Section I, at 3-6, ¶¶ k, m, n. "Impaired property" is defined as

> [T]angible property, other than your product [,] that cannot be used or is less useful because:

> a. It incorporates your product ... that is known or thought to be defective, deficient, inadequate or dangerous; or
> b. You have failed to fulfill the terms of the contract or agreement;
>
> if such property can be restored to use by ... the repair, replacement, adjustment or removal or your product[.]

ECF Dkt. #1, Attachments 1-2, at Section V, ¶8. The three exclusions, (k.), (m.) and (n.) make it clear that the parties intended that the "replacement or repair of faulty goods or workmanship [to be] a business expense and not an insurable liability." *See, e.g., Lisn, Inc. v. Commercial Union Ins. Cos.*, 83 Ohio App. 3d 625, 629-30 (App. Ct. 1992); *Acme Constr. Co. v. Cont'l Nat'l Indem. Co.*, 2003 Ohio App. LEXIS 447, 16-17 (App. Ct. 2003) (quoting *Hahn's Elec. Co. v. Cochran*). The undersigned must examine the underlying state court complaints to determine if the remaining underlying state court suit allegations are excluded by these provisions.

In DILALLO, DiLallo-plaintiff alleges that Defendants "breached their contractual duty to [DiLallo] to perform and provide appropriate materials for said specified jobs." ECF Dkt. #27, Attachment 10 at ¶4. And that Defendants are "strictly liable for all defects in the concrete manufacture and are directly and proximately the cause of numerous complaints, problems, spalding and defects caused to [DiLallo's clients]." ECF Dkt. #27, Attachment 10 at ¶2. Thus, exclusion (k.) applies to the alleged property damage to the driveways of DiLallo's clients arising out of the faulty concrete because this exclusion works to exclude damage to Defendants' product, the concrete. This exclusion furthers the public policy, commonly accepted in Ohio, that a GCL policy is not a performance bond. *See Bosak v. H & R Mason Contrs., Inc.*, 2005-Ohio-6732, ¶36 (Ct. App. 2005) (citing *Panzica Constr. Co. v. Ohio Cas. Ins. Co.* (May 16, 1996), Cuyahoga App. No. 69444, 1996 Ohio App. LEXIS 1975)); *Heile v. Herrmann*, 136 Ohio App. 3d 351, 354, 736 N.E.2d 566, 568 (Ct. App. 1999) (recognizing that commercial general liability policies typically "do not provide

coverage where the damages claimed are the cost of correcting the work itself"). Accordingly, in so far as the underlying state court suits allege damage to the driveways or concrete, the repair or replacement thereof, and economic or business damages, these allegations do not give rise to Plaintiff's duty to defend because they are outside the scope of the CGL policy. *See Hahn's Elec. Co. v. Cochran*, 2002 Ohio 5009, Franklin App. Nos. 01 AP-1391 and 1394 (Ct. App. 2002) (finding that the exclusions generally operate to exclude coverage for damage to the work of the insured to discourage careless work and thus, a liability policy does not cover claims for the insured's defective or insufficient work or for the repair or replacement of that work). Accordingly, Plaintiff has no duty under the GCL policy to defend the claims contained in the DILALLO complaint.

In NAUGHTON, DiLallo alleges that Defendants "manufactured a product that was defective[, and] breached their contractual duty to [DiLallo] to perform and provide appropriate materials for said specified jobs[,]" and so are liable for the defects complained of by the homeowners. ECF Dkt. #15 at 2. For their part, the homeowners allege that the "concrete driveway chipped, cracked, spalled, or otherwise was in a defective and disintegrating condition[,]" and as a result, "[they] have sustained damage to their driveway and home." In so far as the NAUGHTON complaint also alleges damages for the faulty driveways that are the product of Defendants own product, the concrete, they are not covered by the GCL policy and even if they were, exclusion (k.) works to exclude them as well.

The homeowners in NAUGHTON have also alleged damage to their home. Exclusion (k.) does not work to exclude damages to *other property* caused by Defendants' concrete. *See Ferro Corp. v. Blaw-Knox Food & Chem. Equip. Co.*, 2002 Ohio 5472, 2002 WL 31260495, at *4 (Ohio Ct. App. Oct. 10, 2002); *Acme Steak Co.*, 2000 Ohio 2566, 2000 WL 1506199, at *7. However, exclusion (m.) works to exclude collateral damages stemming from Defendants' defective product.

Exclusion (m.) excludes the alleged damage to the house because it excludes property damage or loss of use of the house ("impaired property") that arises out of the defective concrete ("your product"). Thus, if the house was damaged because the concrete driveway was defective, then that damage is excluded from coverage under the policy.[3] Also, under prong two of exclusion (m.), the alleged damage to the house would be excluded from policy coverage because the damage is the result of Defendants' alleged breach of contract to supply good concrete to DiLallo.

Defendants all but concede that this exclusion applies; however they rely on the exception to the exclusion. *See* ECF Dkt. #26 at 7. Under this exception, loss of use of "other property" arising out of the sudden and accidental physical injury to "your product" after it has been put to its intended use is not excluded by the GCL policy. This exception to the exclusion does not apply. The exception refers to a physical injury to "your product", which in this case would be the driveway, that happens "after it has been put to its intended use." The defect in the concrete and the harm to the driveway happened, if at all, at the time the concrete was delivered to the work site. Regarding property damage, the CGL policy indicates that, "[a]ll such loss of use shall be deemed to occur at the time of the occurrence that caused it." ECF Dkt. #1, Attachment 1-2; Section IV, ¶17. The alleged chipping, cracking or spalling may have occurred after the driveway was put to its intended use, but the source of those defects is the substandard concrete that left the driveway in an "otherwise defective and disintegrating condition." The allegedly defective concrete was delivered well before the driveway was put to its intended use. As Defendants concede, any alleged

---

[3] The NAUGHTON Complaint indicates that the damage to the driveway and house are a "result of Defendant's [DiLallo's] negligence." In the cross complaint, DiLallo alleges that the damages alleged in the NAUGHTON complaint are actually a result of Defendants substandard concrete. There are no other facts in the record to indicate that the alleged damage from the house was caused by anything other than Defendants concrete. Exclusion (m.) specifically excludes this kind of collateral damage.

property damage attributable to Defendants occurred when the concrete was delivered to the work site. ECF Dkt. #26 at 6. Further, there are no allegations that the chipping, cracking or spalling occurred suddenly. Thus, the exception to the exclusion does not apply and the alleged damage to the house that occurred as a result of the defective driveway is excluded from coverage.

Plaintiff also argues that exclusion (n.) applies. However, the Ohio courts have interpreted an identical provision to require a recall from the market to trigger this exclusion. *See Erie Ins. Exchange v. Colony Dev. Corp.,* 136 Ohio App. 3d 406, 417-18, 736 N.E.2d 941, 950 (Ct. App. 1999); *Acme Steak Co. v. Great Lakes Mech. Co.*, 2000-Ohio-2566, 2000 Ohio App. LEXIS 4578, 27-28 (Ct. App. 2000). Since there is no allegation of a recall, this exclusion does not apply.

Also, Defendants would have the Court find that the exclusions do not apply because the underlying state court complaints allege money damages far in excess of what it costs to replace the driveways. However, the Court finds that such allegations without more are not sufficient to show a genuine issue of material fact regarding the policy coverage under the CGL at issue here. Defendants point to the complaint in MIRKIN to suggest that there must be collateral damage because the damages complained of far exceed the cost of the driveway itself. However, that case is being defended by a separate insurance agency. Therefore, the allegations in MIRKIN have no bearing on this case. There are no facts for a reasonable trier of fact to conclude that an accident, let alone an occurrence, has happened, nor are there facts for a reasonable trier of fact to conclude that any property damage other than that caused by Defendants allegedly defective concrete has happened.

**IV. CONCLUSION**

Based upon the foregoing, the undersigned GRANTS Plaintiff's motion for summary judgment. Further, the Court DENIES Defendants' motion for summary judgment. ECF Dkt. #s

26-27.

    IT IS SO ORDERED.

    SIGNED and ENTERED on this 17th day of October, 2006.

                                                  */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  United States Magistrate Judge